**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ALICIA FRANK
ex rel MURIEL FRANK,                                          Case Number:

      Petitioner,

v.

BARBARA GINGRANDE and
VITAS HEALTHCARE CORPORATION,

      Respondents.

_____/

**EMERGENCY PETITION FOR WRIT OF**
**HABEAS CORPUS OR INJUNCTION**

ALICIA FRANK, as eldest child and designated healthcare surrogate (pre-guardianship)[1]

of the ward MURIEL FRANK hereby petitions this Court on an emergency basis for a writ of

habeas corpus, injunction, or other appropriate writ to require the guardian BARBARA

GINGRANDE and/or the hospice VITAS HEALTHCARE CORPORATION to release Muriel

Frank into Alicia Frank's legal custody so that she can be given nutrition and hydration rather than

being dehydrated and starved to death. In support thereof, Petitioner states:

1. In 2022, the state probate court declared Muriel Frank incapacitated and appointed a plenary "professional" guardian over her person and property.

2. Barbara Gingrande is the current court-appointed guardian.

---

1.     Alicia Frank is also: (1) the trustee that Muriel designated in her trust; (2) the agent that Muriel designated in her power of attorney (pre-guardianship); (3) the personal representative that Muriel's designated for her estate in her last will and testament; (4) the residuary beneficiary under Muriel's last will and testament; (5) the remainderman who Muriel expressly intended to reside in her home and receive title to it upon her death according a the duly recorded lady bird deed, her last will and testament, her power of attorney, and the operative trust documents; (6) Muriel's former resident caretaker for approximately 4 years (before her siblings and the guardian obtained an order from the state probate court authorizing the guardian to sell Muriel's house to her siblings and to remove Alicia from the premises); and (7) the closest family member to Muriel. Currently, she is the only one fighting for Muriel's life.

3. Prior to the guardianship, Muriel Frank duly executed numerous advanced directives and preneed documents, including a designation of healthcare surrogate naming her as Muriel's designee for making healthcare decisions in the event of her incapacity.

4. Currently, Muriel Frank has been fighting to live following a botched intubated esophageal endoscopy at Cleveland Clinic which caused her to have two strokes.

5. She is breathing on her own, her heart is beating on its own, she is responsive to her environment, and is not suffering from any terminal, end stage, or persistive vegetative condition.

6. Consistent with the specific parameters outlined in her Living Will, Muriel is showing that she does not want to die yet.

7. However, the hospice providers, the court-mandated professional guardian, and Muriel's other family members are forcing her to die solely by depriving her of nutrition and hydration.

8. The state probate court has chosen not to intervene to protect Muriel's right to life and has expressly left the decision of whether to feed and hydrate Muriel in the hands of the guardian and her doctors.

9. The court also denied Alicia Frank's request to have Muriel transferred back to home hospice.

10. At this point, Muriel has been deprived of nutrition and hydration all of this week – with the exception of intermittent intervals of intravenous hydration and one occasion where the guardian allowed Alicia Frank to visit her mother and feed and hydrate her by mouth with miniscule amounts of food and water. Since Wednesday morning July 30, 2025, the hospice and guardian have terminated all nutrition and hydration.

11. Unless this Court intervenes, Muriel will die of starvation and dehydration within the next day or few days.

12. The Declaration of Independence (the founding document of our nation) states:

> We hold these truths to be self-evident, that **all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness**.--That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, --That **whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it**, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness. Prudence, indeed, will dictate that Governments long established should not be changed for light and transient causes; and accordingly all experience hath shewn, that mankind are more disposed to suffer, while evils are sufferable, than to right themselves by abolishing the forms

to which they are accustomed. But **when a long train of abuses and usurpations, pursuing invariably the same Object evinces a design to reduce them under absolute Despotism, it is their right, it is their duty, to throw off such Government, and to provide new Guards for their future security.**

(emphasis added).

13. This case is but one example of many in the guardianship arena[2] in which the laws and the government have been used to destroy life, liberty, and happiness, and to completely override the clearly expressed will of Muriel Frank.

14. More specifically, on Sunday July 27, 2025, the Guardian authorized Muriel to be moved from Cleveland Clinic in Weston, FL to Vitas Healtchare at Broward Health North in Deerfield Beach, FL in the hospice inpatient facility.

15. Upon admission, the Guardian – without Court approval – authorized the hospice facility to remove the tube providing Muriel with nutrition and hydration.

16. At the time, Muriel's medical condition was not terminal, end stage, or persistent vegetative because she was breathing on her own without a breathing tube, her heart was beating on its own without the need for resuscitation, she was swallowing her own saliva, she was more than minimally conscious, she experienced comfort and discomfort, and she responded to others to some degree including petitioner Alicia Frank.

17. On Tuesday, July 29, 2025, Petitioner filed an emergency motion for review of guardian's decision to terminate nutrition and hydration in state probate court. *See* PRC PRC200005658 (Fla. 17th Cir. Ct.)

18. After Petitioner filed her original motion, the Guardian asked the hospice to give Muriel intravenous nutrition and hydration and the hospice complied.

19. At the emergency hearing on July 29, 2025, Muriel's treating physician informed the parties and the court that the hospice had been giving Muriel nutrition and hydration intravenously for approximately four hours, but that it might have to stop again because, according to the doctor, it was causing Muriel's breathing to become "labored." But the doctor admitted that Muriel was "not struggling."

20. The hearing was adjourned because the hospice's restoration of nutrition and hydration provided the relief sought in Alicia Frank's emergency motion, thereby rendering it temporarily moot.

---

2.      *See* The Price of Protection – Appalling Findings Audit of Florida's Guardianship Watchdog Agency Exposes Guardianship (ABC Action News Mar. 25, 2025). These abuses are systemic, widespread, and pervasive in guardianships across the country – so much so that Hollywood recently made a major motion picture about it.  *See* Blakeson, J. (director), *I Care a Lot* (STXfilms 2021).

3

21. However, within hours after the hearing, the hospice withdrew the intravenous hydration and refuses to provide nutrition and hydration by mouth or any other means.

22. Muriel is now suffering from dehydration and lack of nutrients.

23. Muriel is not dying from natural causes; instead, hospice is starving her to death.

24. Muriel's advanced directives include a February 14, 2016 "Living Will" that provides the following:

> If at any time I have a terminal or incurable or irreversible mental or physical condition and if my attending or treating physician and another consulting physician have determined that there is no medical or reasonable expectation or probability of my recovery from such condition, I direct that life-prolonging procedures be withheld or withdrawn **when the application of such procedures would merely prolong artificially the process of dying**, and that I be permitted to die naturally with only the administration of medication or the performance of any medical procedure deemed necessary to provide me with comfort, care or to alleviate pain. I do not wish to prolong life on a **terminal** condition, **end-stage** condition or **persistent vegetative state**.

*See* attached (emphasis added). Unlike her most recent Designation of Healthcare Surrogate (which specifically designated Alicia Frank as healthcare surrogate), Muriel's Living Will was not abolished by any order entered in the guardianship or incapacity proceedings.

25. "Advance directive" means a witnessed written document or oral statement in which instructions are given by a principal or in which the principal's desires are expressed concerning any aspect of the principal's health care or health information, and includes, but is not limited to, the designation of a health care surrogate, a **living will**, or an anatomical gift made pursuant to part V of this chapter." *See* s. 765.101(1), Fla. Stat. (emphasis added). "Any advance directive made prior to October 1, 1999, **shall** be given effect as executed, provided such directive was legally effective when written." *See* s. 765.103, Fla. Stat. (emphasis added). "A living will, executed pursuant to this section, establishes a rebuttable presumption of clear and convincing evidence of the principal's wishes." *See* s. 765.302, Fla. Stat. "If a person has made a living will expressing his or her desires concerning life-prolonging procedures, but has not designated a surrogate to execute his or her wishes concerning life-prolonging procedures or designated a surrogate under part II, the person's primary physician may proceed as directed by the principal in the living will. In the event of a dispute or disagreement concerning the primary physician's decision to withhold or withdraw life-prolonging procedures, the primary physician **shall not** withhold or withdraw life-prolonging procedures pending review under s. 765.105. If a review of a disputed decision is not sought within 7 days following the primary physician's decision to withhold or withdraw life-prolonging procedures, the primary

physician may proceed in accordance with the principal's instructions." *See* s. 765.304, Fla. Stat.

26. "In determining whether the patient has a terminal condition, has an end-stage condition, or is in a persistent vegetative state or may recover capacity, or whether a medical condition or limitation referred to in an advance directive exists, the patient's primary physician and at least one other consulting physician must separately examine the patient. The findings of each such examination must be documented in the patient's medical record and signed by each examining physician before life-prolonging procedures may be withheld or withdrawn." *See* s. 765.306, Fla. Stat. "Terminal condition" means "a condition caused by injury, disease, or illness from which there is no reasonable medical probability of recovery and which, without treatment, can be **expected to cause death**." *See* s. 765.101(22), Fla. Stat. (emphasis added). "End-stage condition" means "an irreversible condition that is caused by injury, disease, or illness which has resulted in progressively severe and permanent deterioration, and which, to a reasonable degree of medical probability, treatment of the condition would be ineffective." *See* s. 765.101, Fla. Stat. (emphasis added).

27. According to section 400.609, Florida Statutes, "[e]ach hospice **shall** provide a continuum of hospice services which afford the patient and the family of the patient a range of service delivery which can be tailored to specific needs and preferences of the patient and family at any point in time throughout the length of care for the terminally ill patient and during the bereavement period. These services must be available 24 hours a day, 7 days a week." *See* s. 400.609, Fla. Stat. (emphasis added). The statute further provides that "[t]he **inpatient** component of care is a short-term adjunct to hospice home care and hospice residential care and shall be used **only** for pain control, symptom management, or respite care . . . The facility or rooms within a facility used for the hospice inpatient component of care shall be arranged, administered, and managed in such a manner as to **provide privacy, dignity, comfort, warmth, and safety** for the terminally ill patient and the family. . . There must be a **continuum of care** and a continuity of caregivers between the hospice home program and the inpatient aspect of care to the extent practicable and compatible with the preferences of the patient and his or her family." *See* s. 400.609(4), Fla. Stat. (emphasis added). "Each hospice **shall** make its services available to all terminally ill persons and their families without regard to age, gender, national origin, sexual orientation, disability, diagnosis, cost of therapy, ability to pay, or life circumstances. A hospice **shall not** impose any value or belief system on its patients or their families and shall respect the values and belief systems of its patients and their families." *See* s. 400.6095, Fla. Stat. (emphasis added). "At the time of admission, the hospice shall inquire whether advance directives have been executed pursuant to chapter 765[.]" *See* s. 400.6095(3), Fla. Stat. "A health care provider or facility that refuses to comply with a patient's advance directive, or the treatment decision of his or her surrogate or proxy, shall make reasonable efforts to transfer the patient to another health care provider or facility that will comply with the directive or treatment decision." *See* 765.1105(1), Fla. Stat. "Nothing in this chapter shall be construed to condone, authorize, or approve mercy killing or euthanasia, or to permit any affirmative or deliberate act or omission to end life other than to permit the natural process of dying." *See* s. 765.309(1), Fla. Stat. (emphasis added).

28. The Supreme Court of Florida in *In re: Guardianship of Browning*, 568 So. 2d 4 (Fla. 1990) considered whether the guardian of an incompetent patient who suffered from an incurable but not terminal condition, may exercise the patient's rights of self determination to forego sustenance provided by artificial means. The Court concluded that a person's **right of self determination**, commonly known as the **right of privacy**, includes the right to refuse medical treatment. If the patient has left instructions by way of a declaration regarding health care, the surrogate must abide by the patient's stated decision. the Court's decision clarifies the individual's right of privacy by concluding that the provision of nutrition and hydration by artificial means is included within this **constitutional right**. According to the supreme court: "The issue involves a patient's right of self-determination and does **not** involve what is thought to be in the patient's best interests." *Id.* (emphasis added).

29. This Court previously authorized, and Muriel has been receiving hospice home care and hospice residential care at her home, and she has been receiving home hospice care for more than 2 ½ years.

30. To date, no treating physician has made any such determination, and no treating physician has diagnosed Muriel as having a "terminal" or "end stage" condition, or as being in a "persistent vegetative state." In short, there is no evidence that Muriel is "dying" from anything other than lack of food and water.

31. Given the foregoing, the Guardian's decision to terminate Muriel's nutrition and hydration was not only without prior court approval, it directly contravenes the mandatory requirements of Florida Statutes, the supreme court's holding in Browning, and Muriel's own expressed wishes in her Living Will.

32. Alicia Frank is ready, willing, and able to care for Muriel and has have medical professionals to provide Muriel with all of the necessary medical treatment she needs as well as nutrition and hydration consistent with the terms that Muriel expressed in her advanced directives.

33. Under these circumstances, there is absolutely no legitimate basis for the hospice and the court appointed guardian to contravene Muriel's expressed wishes and hasten her death.

34. In short, it seems Muriel's life has become an inconvenience to those who are supposed to be *caring* for her and *guarding* her best interests.

WHEREFORE, Alicia Frank requests that the Court grant this petition and order that Muriel be immediately released into Alicia Frank's custody and care consistent with the terms of Muriel's healthcare surrogate designation, operative trust documents, and durable power of attorney.

6

## REQUEST FOR EMERGENCY HEARING

Petitioner Alicia Frank hereby requests an emergency hearing on the matters raised in this petition.

## CERTIFICATE OF SERVICE

I hereby certify that on **August 2, 2025** a true and correct copy of this document was filed and served through the e-filing portal to:

| | |
|---|---|
| **Jason Allen Rosner**<br>*Counsel for Howard and Sheryl*<br>JASON A. ROSNER, P.A.<br>1930 Harrison St Ste 203<br>Hollywood, FL 33020<br>Phone: 954-636-3106<br>jrosner@jarlaw.com | **John P. Seiler**<br>*Counsel for Guardian Barbara Gingrande*<br>SEILER SAUTTER ZADEN RIMES & WAHLBRINK<br>2850 N. Andrews Avenue<br>Fort Lauderdale, FL 33311<br>Phone: 954-568-7000<br>jseiler@sszrlaw.com |
| | **Brian Judkins**<br>*General Counsel for Vitas Healthcare Corporation*<br>201 S Biscayne Blvd, Suite 400<br>Miami, FL 33131<br>brian.judkins@vitas.com |

Respectfully Submitted,

/s/ Thomas L. Hunker
**Thomas L. Hunker**
Florida Bar No. 38325
**V. Ashley Paxton**
Florida Bar No. 1003907
HUNKER PAXTON APPEALS & TRIALS
*Counsel for Alicia Frank*
3959 NW 18th Avenue
Oakland Park, FL 33309
Phone: 954-218-1836
thomas.hunker@hunkerappeals.com
ashley.paxton@hunkerappeals.com